1

2

3

4

5

6

7

8

9           **IN THE UNITED STATES DISTRICT COURT**

10         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12   KHA YANG,                                    CASE NO. CV-F-04-5454 LJO

13                        Plaintiff,              **DECISION ON SOCIAL SECURITY**
                                                  **COMPLAINT**
14          vs.                                   (Docs. 11, 14, 16.)

15   JO ANNE B. BARNHART,
     Commissioner of Social
16   Security,

17                        Defendant.
                                            /
18

19                              **INTRODUCTION**

20          Plaintiff Kha Yang ("plaintiff") seeks this Court's review of an administrative law judge's

21   ("ALJ's") decision finding that plaintiff is not disabled and is ineligible  for Supplemental Security

22   Income ("SSI") under Title XVI of Social Security Act ("Act"), 42 U.S.C. §§ 1381–1381d.  Pursuant

23   to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties agreed to proceed before a United States Magistrate

24   Judge, and by an August 4, 2004 order, this action was assigned to United States Magistrate Judge

25   Lawrence J. O'Neill for all proceedings.  Based on review of the Administrative Record ("AR") and the

26   papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security

27   ("Commissioner"),  this Court DENIES plaintiff's request to reverse the Commissioner's decision to

28   deny plaintiff SSI or to remand for further proceedings.

                                              1

**BACKGROUND**

**Plaintiff's Personal Background**

Plaintiff is age 50, lives with her husband and most of her nine children, the youngest of which is age 10. (128.) She was born in Laos, came to the United States in 1980, has no formal education, is essentially illiterate, and claims that she can neither speak nor write English although she attended an English as second language class for three to four months. (AR 78, 85, 108, 128.) She has no past relevant work experience. (AR 17, 19, 128.)

**Administrative Proceedings**

On September 26, 2000, plaintiff filed her SSI application with the Social Security Administration ("SSA") to claim disability since January 15, 1996 based on major depression, high blood pressure, heart disease, arthritis, headache, back pain, and ulcer. (AR 73, 79, 81.) With its February 13, 2000 Notice of Disapproved Claims, SSA denied plaintiff's claim and determined plaintiff's condition is not severe enough to prevent her to work. (AR 63.)

On March 7, 2001, counsel was appointed for plaintiff. (AR 26.) On that same day, plaintiff filed her Request for Reconsideration to claim that she is "totally disabled." (AR 67.) With its April 19, 2001 Notice of Reconsideration, SSA denied plaintiff's claim and again determined that plaintiff's condition is not severe enough to prevent her to work. (AR 68.) SSA noted that according to the medical evidence, plaintiff's blood pressure is under fair control, her heartbeat and function is satisfactory, she has normal ranges of motion of the back and joints, there is no indication of kidney problem, and she is able to think, communicate and act for herself. (AR 68.) SSA also determined that despite lacking work experience, plaintiff should be able to work at some jobs which are not difficult to learn and remember. (AR 68.)

On May 9, 2001, plaintiff filed her Request for Hearing by Administrative Law Judge and claimed she is "totally disabled." (AR 72.) After an August 13, 2002 hearing, the ALJ issued his September 16, 2002 decision to conclude that plaintiff has residual functional capacity to perform medium work and is ineligible for SSI. (AR 20-21.)

Plaintiff submitted to SSA's Appeals Council her September 16, 2002 Request for Review of Hearing Decision. (AR 72.) On February 6, 2004, the Appeals Council denied plaintiff's request for

1  review to render the ALJ's decision as the Commissioner's final determination subject to this Court's

2  review.  (AR 3.)  Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. §§ 405(g)

3  and 1383(c)(3).

## Medical History And Records Review

### *Orlando T. Collado, M.D., Treating Psychiatrist*

6  Plaintiff treated with Orando T. Collado, M.D. ("Dr. Collado"), a psychiatrist, and during April

7  1998 to March 2000, Dr. Collado saw plaintiff every two months.  (AR 108.) On April 18, 1998,

8  plaintiff's chief complaints were depression, stomach pain and weakness of the left arm. (AR 108.) On

9  March 25, 2000, Dr. Collado conducted a psychiatric evaluation of plaintiff who reported to Dr. Collado

10 that her experience during the war in Southeastern Asia was scary, that she saw her two nephews and

11 sister-in-law "blown to pieces," and that she continues to see these images since coming to the United

12 States in 1980. (AR 107.)  Plaintiff feels less angry and the intensity of the nightmares have reduced

13 although she continues to awake from nightmares feeling scared. (AR 108.)

14 Dr. Collado's mental status examination revealed that plaintiff appears to be depressed, her affect

15 is flat, her speech is spontaneous, and her thought content reveals neither grandiose nor paranoid

16 delusions. (AR 108.) Plaintiff denied hallucinations but admitted to suicidal thoughts although plaintiff

17 had made no serious attempts and lacked plans or intentions of wanting to hurt herself. (AR 108.)  Dr.

18 Collado noted plaintiff's memory is somewhat clouded, she was unable to provide the current date, and

19 could not remember her address. (AR 109.)  Dr. Collado found her insight minimal and her judgement

20 moderately impaired.  (AR 109.)

21 Dr. Collado diagnosed major depression, single episode, moderate, rule out possible post

22 traumatic stress disorder with underlying depression, and assessed a Global Assessment of Functioning

23 ("GAF") of 50.  (AR 110.)  Dr. Collado summarized:

24     In her present emotional state I believe that this individual will not be able to relate to co-
       employees as well as supervisors.  Her ability to deal with the public is also impaired. .
25     . . She feels scared when she is around people.  Her ability to follow simple instructions
       is fair.  She will have difficulty remembering and following complex instructions.  This
26     individual continues to be fearful.  She has shown that her memory is poor, evidenced
       by the fact that she forgets what she is doing when she tries to cook and burns the food.
27     . . . Her attention and concentration is [sic] poorly maintained.  Due to the above findings
       I believe that patient will not be able to cope with the stressors of an eight-hour a day job
28     on a day to day basis. . . . Duration of illness is more than one year.  Prognosis is fair.

3

1    (AR 109.)

2        On January 5, 2001, Dr. Collado completed a Short Form Evaluation for Mental Disorders to

3    indicate that plaintiff is well-groomed, that her motor activity is retarded, and that her speech is normal.

4    (AR 105.) Dr. Collado further noted that plaintiff is oriented in all spheres, that her immediate memory

5    is mildly impaired, and that her intelligence is below average. (AR 105.) Dr. Collado found plaintiff's

6    mood depressed but plaintiff appeared goal oriented. (AR 105-106.) Dr. Collado noted plaintiff's

7    suicidal ideations. (AR 106.) Dr. Collado noted that plaintiff shows slight improvement with better

8    sleep and appetite. (AR 106.) Dr. Collado assessed as poor plaintiff's ability to: (1) understand,

9    remember and perform detailed/complex instructions; (2) maintain concentration for two-hour periods;

10   (3) interact with co-workers and supervisors; (3) sustain an ordinary routine without special supervision;

11   and (4) handle the responsibilities common to a basic work environment. (AR 106.) Dr. Collado

12   specifically noted plaintiff's inability to be around people and to focus, preoccupation with her physical

13   problems, and  suicidal thoughts without plans. (AR 106.)

14       Dr. Collado's progress notes up to June 23, 2001 indicate that plaintiff reported she continued

15   to take her medications with no adverse side effects and had improved sleep. (AR 382-384.) Plaintiff

16   experiences nightmares which interrupt her sleep and cannot fall asleep after being awoken. (AR 382-

17   384.) Dr. Collado consistently reported that plaintiff denied suicidal or homicidal intent. (AR 382-384.)

18                      *Fresno County Mental Health, Group Therapy*

19       During 1997-2001, plaintiff treated with Fresno County Mental Health were she participated in

20   group therapy. (AR 144-150, 161-229.) A January 11, 1999 diagnosis was major depressive disorder,

21   recurrent, without psychotic features, and post traumatic stress disorder. (AR 209.) Progress notes

22   reflect that plaintiff expressed feeling good to get out of house, ate lunch with her peers, encouraged

23   peers to share her food, and interacted well with peers. (AR 144, 164, 166, 177, 180, 181, 207, 213,

24   219.) Progress notes further reflect plaintiff is active in group meetings and expressed enjoying group

25   meetings. (AR 144-290.) March 6, 2001 progress notes reflect plaintiff felt less depressed and "is

26   learning how to cope with her feelings better than before." (AR 144, 145.)

27                       *Freddie Hayes, M.D., Treating Physician*

28       During 1999-2000, plaintiff treated with Freddie Hayes, M.D. ("Dr. Hayes"), a general

4

1   practitioner.  During her 10 visits with Dr. Hayes, plaintiff generally complained of stomach ache,

2   headache, hand joint and back pain. (AR 116-118, 120,121.)  As to plaintiff's April 2, 2000 visit, Dr.

3   Hayes indicated that all areas were normal except plaintiff's depressed mental status and some

4   tenderness over plaintiff's neck and lower back.  (AR 113.)  During her visits with Dr. Hayes, plaintiff

5   lost up to four pounds during May 1999 to September 1999 but gained 11 pounds form September 1999

6   to February 20000.  (AR 111-121.)

### Edward R. Mosley, M.D., Consultative Internist

8        Edward R. Mosley, M.D. ("Dr. Mosley"), a board eligible internist, conducted a November 14,

9   2000 consultative examination of plaintiff. (AR 124.) Plaintiff's chief complaints were: (1) high blood

10  pressure for approximately four years; (2) back pain which begins in her abdomen and radiates to her

11  back and which she describes as burning, squeezing sensation precipitated by lifting and bending; and

12  (3) peptic ulcer which started five years ago to render her unable to eat spicy food and to result in her

13  reported 15-pound weight loss. (AR 122, 123.)  Dr. Mosley recorded plaintiff as 4-foot-11 and146

14  pounds with blood pressure of 118/60.  (AR 124.)

15       Range of motion for plaintiff's shoulders, elbows, hands, wrists, hips, knees, ankles and back was

16  in normal range along with normal reflexic biceps and knee jerks bilaterally, equal and active bilaterally.

17  (AR 125, 126.)   Dr. Mosley noted no tenderness in plaintiff's back from the palpation in the midline

18  or paraspinal areas.  (AR 125.)  Straight leg testing and Laseque's sign to indicate sciatica were negative.

19  (AR 125.) Dr. Mosley found no muscle spasm, and muscle tone appeared equal throughout.  (AR 125.)

20  Dr. Mosley's neurological examination was normal in that plaintiff had good muscle tone, her strength

21  was symmetric, her sensory exam was grossly intact, her Romberg's sign was negative, her reflexes were

22  normal, her cranial nerves were intact, and her gait was within normal limits.  (AR 126.)  Dr. Mosley

23  diagnosed hypertension by history, well-controlled, back pain without evidence of sciatic involvement,

24  and history of peptic ulcer disease.  (AR 126.)   As to plaintiff's functional capacity, Dr. Mosley

25  concluded: "There are no objective findings on which to base restriction of this patient's physical

26  activities."  (AR 126.)

### Ekram Michiel, M.D., Consultative Psychiatrist

28       Ekram Michiel, M.D. ("Dr. Michiel"), a board certified psychiatrist, conducted a November 19,

2000 consultative psychiatric evaluation. (AR 127.) Plaintiff's chief complaint was that: "I am stressed out. I feel sad for a long time. My children are treating me bad. My husband is violent and I have to run away from them." (AR 127.) Plaintiff reported that she needs to take medication at night to avoid bad dreams related to bombing her village during the war and seeing images of dead bodies. (AR 127.) Mr. Michiel noted plaintiff is able to care for her personal hygiene, shop, cook and perform light household chores. (AR 128.) Dr. Michiel found plaintiff cooperative, attentive, coherent, logical, and oriented to person, place and date. (AR 129.) Dr. Michiel noted that plaintiff's mood was depressed and stressed out, that her affect was generally broad and appropriate, and that plaintiff denied suicidal or homicidal ideations. (AR 129.) As to reality content, Dr. Michiel found: "Thought process was goal-oriented. Thought content was not delusional. She admitted to hearing voices sometimes, but she said it is inside her head. She also sees images of dead bodies." (AR 129.) Dr. Michiel diagnosed depressive disorder, not otherwise specified and assigned a GAF of 55-60. (AR 129.) Dr. Michiel concluded:

> Based upon the evaluation, I believe the patient is able to maintain adequate attention and concentration and to carry out one or two step simple job instructions.
>
> The patient is able to relate and interact appropriately with coworkers, supervisors and the general public while performing the simple job instructions.
>
> The patient is unable to carry out an extensive variety of technical and/or complex instructions. (AR 130.)

### *Fresno Community Hospital*

On January 11, 2000, plaintiff presented to the Fresno Community Hospital emergency room with abdominal pain. (AR 375.) Plaintiff underwent a January 12, 2001 appendectomy. (AR 363.) On her January 13, 2001 discharge, plaintiff was advised to avoid heavy lifting and pushing and pulling for four to six weeks. (AR 360.)

### *Charles K. Phillips, M.D., Treating Physician*

During May 2000 – April 2002, plaintiff treated with Charles K. Phillips, M.D. ("Dr. Phillips"), an emergency and family practitioner at Kings Winery Medical Clinic. During this time period, plaintiff's weight fluctuated from 143 to 154 pounds, she never lost more than four pounds but gained 11 pounds during October 2000 to March 2001. (AR 132-137.) During 22 of 29 of her periodic check ups, plaintiff had high blood pressure ranging from 178/96 to 131/80. During the other seven visits, she

1    appeared to be within normal blood pressure range.  (AR 141, 142.)

2        Plaintiff was generally treated for hypertension, back pain, leg pain and headaches.  (AR 311-

3    336, 342-388.)  On March 23, 2001, plaintiff complained of right leg pain although she had full range

4    of motion in her lower extremities and a negative leg raising test.  (AR 422.)  As of June 4, 2001,

5    plaintiff's leg pain improved, and she walked without assistance or limping.  (AR 419.)

6        Based on history of neck pain, Dr. Phillips ordered a March 9, 2002 neck x-ray which

7    demonstrated no significant abnormalities.  (AR 347.)  Based on history of hypertension, Dr. Phillips

8    ordered a March 9, 2002 chest x-ray which revealed no evidence of acute cardiopulmonary disease.  (AR

9    346.)  Based on history of headaches, Dr. Phillips ordered a March 20, 2002 head CT scan which was

10   unremarkable.  (AR 398.)  April 2, 2002 notes reflect plaintiff's hypertension was controlled.  (AR 397.)

11       Dr. Phillips completed an April 8, 2002 questionnaire to conclude that plaintiff is precluded to

12   perform full-time work at any exertional level due to the medical problems for which he has treated her.

13   (AR 342.)  He indicated  that her primary impairments are migraine headache, myalgia, neurolysis,

14   gastritis, depression, possible disc – low back and neck, and hypertension.  (AR 342.)  The objective

15   findings for these impairments are low back tenderness, two MVA's part, bizarre leg rash and a couple

16   of other illegible conditions.  (AR 342.)

17       A June 12, 2002 electrocardiogram revealed normal sinus rhythm and nonspecific inferior T

18   abnormalities.  (AR 390.)  A July 5, 2002 CT scan of plaintiff's lumbar spine revealed bilateral L5 pars

19   defect with mild spondylolisthesis of L5 on S1, a moderate broad base bulge but no protrusion or

20   significant spinal stenosis.  (AR 386.)  July 10, 2002 notes reflect the CT scan of plaintiff's lumbar spine

21   was a borderline finding.  (AR 385.)  July 15, 2002 notes reflect the CT scan revealed plaintiff is not

22   surgical.  (AR 389.)

23       Dr. Phillips completed an August 12, 2002 Complete Medical Report (Physical) to note his

24   clinical findings of tender low and upper back, neck and elbow.  (AR 471.)  Dr. Phillips diagnosed daily

25   migraines, daily back pain, myalgia, and hypertension.  (AR 471.)  Dr. Phillips noted his medication

26   treatment to moderately control pain.  (AR 471.) Dr. Phillips' prognosis was "chronic problems – cannot

27   work."  (AR 471.)

28       Dr. Phillips completed an August 12, 2002 medical assessment to conclude plaintiff is able to:

1   (1) occasionally lift/carry up to 10 pounds; (2) sit or stand/walk two hours during an eight-hour workday

2   for up to one hour without interruption; and (3) lie/elevate three hours during an eight-hour workday for

3   up to two hours without interruption.  (AR 473.)  Dr. Phillips pointed to everyday back pain and

4   headaches to support his assessment.  (AR 473.)  Dr. Phillips noted plaintiff could not use her left hand

5   for fine manipulation.  (AR 473.)

6                    ***Maximo Parayno Jr., M.D., Treating Psychiatrist***

7            Plaintiff treated with Maximo Parayno Jr. M.D. ("Dr. Parayno"), a psychiatrist, during November

8   2001 to June 2002 at Kings Winery Medical Clinic.  Dr. Parayno's observations and objective findings

9   were consistent that plaintiff is alert but distracted, has coherent speech and depressed mood, cries and

10  is tearful, feels helpless and worthless, denies hallucinations and delusions, and has poor memory and

11  concentration. (AR 391, 396, 399, 403, 405, 408.)  On November 8, 2001, Dr. Parayno diagnosed

12  depression, not otherwise specified and rule out adjustment disorder with depressed features, assigned

13  a GAF of 60, and prescribed medication.  (AR 408.)  On February 11, 2002, Dr. Parayno noted that

14  plaintiff was alert but disoriented, that her speech was spontaneous and coherent, that she denied suicidal

15  ideation, and that she reported she felt hopeless and worthless and was forgetful.  (AR 403.)  Her

16  reported March 12, 2002 and June 6, 2002 symptoms were similar.

17           Dr. Parayno completed an April 9, 2002 Mental Assessment to conclude plaintiff is moderately

18  to markedly limited in aspects of: (1) understanding and memory; (2) sustained concentration and

19  persistence; (3) social interaction; and (4) adaptation.  (AR 337-340.)  Despite a request to do so, Dr.

20  Parayno failed to elaborate on plaintiff's functional capacity assessment.  (AR 340.)

21                          ***Psychiatric Review Technique***

22           Evangeline Murillo, M.D. ("Dr. Murillo"), completed a January 31, 2001 Psychiatric Review

23  Technique to note plaintiff's medically determinable impairment of depression, recurrent.  (AR 294.)

24  Dr. Murillo found plaintiff had mild restriction of daily living activities, mild difficulties in maintaining

25  social functioning, and mild difficulties in maintaining concentration, persistence or pace.  (AR 301.)

26  On April 18, 2001, a second physician affirmed Dr. Murillo's assessment.  (AR 291.)

27                                ***Medications***

28           Plaintiff's medications have included Zomig, Tylenol, Rantidine 150 mg, Trazodone, Zoloft,

1   Acetaminophen #3, Ultram, Diphenhydramine, Lotrel, Arthrotec, Remeron 15 mg, Penicillin 500 mg,

2   Norvasc 10 mg, and Paxil.  (AR 104, 128.)

3                              **Plaintiff's Activities And Testimony**

4   _____*Reports and Questionnaires*

5       Plaintiff's October 6, 2000 Disability Report states that her disabling conditions are major

6   depression, high blood pressure, heart disease, arthritis, headache, and ulcer which arose January 15,

7   1996. (AR 79.)

8       Plaintiff completed an October 6, 2000 Daily Activities Questionnaire to explain that on an

9   average day she is unable to concentrate, lies in bed a lot, and does very light house work. (AR 90.)

10  Plaintiff has difficulty sleeping due to severe headaches. (AR 90.)  Plaintiff is careless about her look,

11  does not care to wear clean or nice clothes, and does not maintain her hair. (AR 90.)  Plaintiff does not

12  cook much, her husband and children cook for the family, and she is able to cook unsalted vegetables

13  once a week.  (AR 90.)  Plaintiff does not shop; her husband and children shop. (AR 91.)  Plaintiff is

14  able to do very light dusting or a few dishes but needs help completing such chores because she is weak

15  and depressed.  (AR 91.)  Plaintiff has difficulty socializing and has no interest to call or visit anyone.

16  (AR 92.)  Plaintiff goes to a park or lake with her husband once every two or three months. (AR 92.)

17      Yeng Xieng, plaintiff's friend whom has known plaintiff for about six years, completed an

18  undated Daily Activities Questionnaire (Third Party Information) to note on a typical day, plaintiff sleeps

19  and walks around at home. (AR 94.)  Plaintiff normally sleeps two to three hours and needs medication

20  to help her sleep. (AR 94.)  Plaintiff is unable to take care of herself and is dependent on her husband.

21  (AR 95.)  Plaintiff's grooming habits have changed since she became ill in that she was capable of caring

22  for herself before but she is unable to now.  (AR 95.)  Plaintiff does not shop or do household chores.

23  (AR 95.)  Plaintiff needs assistance to make sure she is able to come back home. (AR 95.)  Plaintiff does

24  not have activities or interests, is depressed, has nightmares, and sees ghosts every night. (AR 97.)

25      In her March 5, 2001 Reconsideration Report for Disability, plaintiff claimed she "cannot do

26  prolonged standing or handle the stress of an 8-hour day." (AR 98.)  She noted that no physician had

27  placed restrictions on her since she filed her SSI application and that there have been no additional

28  injuries or illness of which she is aware. (AR 98.)

1

***Plaintiff's Hearing Testimony***

2   Plaintiff testified, with the aid of an interpreter, at the August 13, 2002 ALJ hearing that she

3   lives with her husband and most of her nine children, the youngest of which at that time was age eight

4   and the oldest's age was unknown to plaintiff. (AR 477, 478.) Plaintiff has never worked in the United

5   States. (AR 479, 480.) Plaintiff has a driver's license but does not drive because of high blood pressure,

6   headaches and dizzy spells. (AR480.) She estimates that she has not driven for a year or two. (AR 480,

7   481.) After plaintiff's daughter Rebecca Xiong ("Ms. Xiong") testified that plaintiff drives at times to

8   a nearby Asian market, plaintiff explained she drives "a short distance and . . . it slipped my mind. I just

9   don't remember. I have no idea. I don't remember." (AR 505.)

10   Plaintiff has attended school in the United States only to learn English to become a United States

11   citizen but is unable to read or write in English. (AR 481, 482.) Plaintiff can not recall when she

12   became a United States citizen but roughly estimates eight years ago. (AR 482.)

13   Plaintiff claims she is unable to work full time because of pain in her lower back and head. (AR

14   483.) Plaintiff's back pain is sharp and tight. (AR 483.) She is able to stand for 20 minutes before

15   changing position. (AR 483.) She is able to sit in one place for an hour before needing to lie down.

16   (AR 484.) Plaintiff uses hot packs to alleviate her back pain. (AR 484.) Plaintiff does no stretching or

17   exercising. (AR 484.) Plaintiff medication "helps to put me to sleep, and when I sleep then I forget

18   about the pain. . . . I think I do not have any side effects of the medication because that medication is

19   specifically to help my pain." (AR 485.)

20   Plaintiff is able to lift up to a milk gallon without pain aggravation. (AR 485.) Plaintiff gets

21   headaches when her children cook onions or noodles but does not get headaches if they do not cook.

22   (AR 485, 486.)

23   Plaintiff sees a doctor for depression which she claims arose because "I want to be like others.

24   I want to get a job." (AR 486.) Plaintiff tried to get a job by submitting applications but was rejected

25   for high blood pressure and her back. (AR 486.) She estimated she last applied for a job around New

26   Year's as celebrated in the United States. (AR 487.) She later qualified that she applied three or four

27   months before New Year's. (AR 488.)

28   Plaintiff sometimes grocery shops but not other times because her family members take too long.

(AR 489.)  She only goes for quick shopping.  (AR 489.)  Plaintiff cleans half the time and picks up. (AR 489.)  Plaintiff does not do household chores such as laundry, mopping or vacuuming; her daughters do such chores.  (AR 490.)  Plaintiff's low back pain prevents her to perform household chores.  (AR 491.)

Plaintiff missed meetings at her mental health clinic to supervise her children and to make sure "they don't catch fire or hot water."  (AR 491.)   When asked about mental health care reports that she missed meetings because she was busy to prepare her family for the long New Year's celebration, plaintiff noted she was not and her husband could not take her to meetings. (AR 492, 493.)  She missed meetings to watch her son who is not in school after misbehaving.  (AR 493.)

Plaintiff denied seeing Ms. Xiong's seventh grade teacher because she does not speak the language.  (AR 488.)  When plaintiff went to her children's school, there was an interpreter.  (AR 488.) Plaintiff denied ever attending a Cambodian New Year's celebration.  (AR 493.)

### *Testimony Of Plaintiff's Daughter*

Ms. Xiong testified at the August 13, 2002 ALJ hearing that she lives with her mother.  (AR 495.)  Plaintiff attended Ms. Xiong's 1999 high school graduation.  (AR 497.) Plaintiff visited Ms. Xiong's teachers and accompanied Ms. Xiong to school up to seventh grade.  (AR 497.)

Ms. Xiong takes plaintiff to parks and the lake but plaintiff does not like shopping because of back pain from walking.  (AR 498.)  When plaintiff goes to the park, plaintiff lies down because of her high blood pressure, back pain and fatigue.  (AR 500.)  Plaintiff never goes to the park on her own.  (AR 501.)  Ms. Xiong and her siblings do household cooking.  (AR 498-499.)

In the past, plaintiff "was always barbecuing" for the Hmong New Year's celebration.  (AR 501.) Plaintiff attended the most recent New Years celebration for a couple of hours one day.  (AR 501.)

Plaintiff seems "really, really depressed."  (AR 502.)  Plaintiff has a drivers license and "hardly drives."  (AR 503.)  At times, plaintiff drives to a nearby Asian store.  (AR 504.)

### **The ALJ's Finding**

In his September 16, 2002 decision, the ALJ identified the specific issue as whether plaintiff is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or

that has lasted or can be expected to last for a continuous period of not less than 12 months.  (AR 13.)

In determining that plaintiff is not disabled and is ineligible for SSI, the ALJ found:

1.    Plaintiff has severe impairments of hypertension, controlled with medication prescribed, back pain, and a depressive disorder, not otherwise specified but which do not meet or medically equal an impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

2.    Plaintiff's allegations regarding her limitations are not totally credible.

3.    Plaintiff has the residual functional capacity for simple, repetitive medium work.

4.    Plaintiff has no past relevant work experience.

5.    Plaintiff has no formal education, is essentially illiterate, and is unable to communicate in English.

6.    Plaintiff has the residual functional capacity to perform substantially all of the full range of medium work.

7.    Plaintiff's capacity for medium work is substantially intact and has not been significantly compromised by nonexertional limitations in that plaintiff has the mental capacity for simple, repetitive tasks.

8.    Based on an exertional capacity for medium work, and plaintiff's age and vocational background, Rule 203.25 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2, directs a "not disabled" conclusion.  (AR 18, 20-21.)

## DISCUSSION

### Standard of Review

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ.  *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human*

/ / /

/ / /

/ / /

*Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).[1]  Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is substantial evidence to support the administrative finding, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).  Plaintiff bears the burden to prove that she is disabled which requires presentation of "complete and detailed objective medical reports of her condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).  "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Here, plaintiff claims disability since January 15, 1996 due to major depression, heart disease, arthritis and high blood pressure.  As discussed below, this Court finds that the ALJ properly evaluated the evidence and that his conclusion that the plaintiff is not disabled is based on proper legal standards and substantial evidence.

---

[1]        "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

1          **Evaluation of Dr. Phillips' Opinion**

2          Plaintiff contends that the ALJ's bases for rejecting Dr. Phillip's opinion are insufficient due to

3    lack of support and failure to contact him to clarify the opinion.  The Commissioner contends the ALJ

4    provided valid reasons to reject Dr. Phillips' opinion.

5          The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who

6    treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining

7    or consultative physicians); and (3) those who neither examine nor treat the claimant (non-examining

8    physicians). Generally more weight should be given to the opinion of a treating source than to the

9    opinion of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995);

10   *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  The regulations give more weight to opinions that

11   are explained than to those that are not, *see* 20 C.F.R. § 404.1527(d)(3), and to the opinions of specialists

12   concerning matters relating to their specialty over those of nonspecialists, *see* 20 C.F.R. §

13   404.1527(d)(5).  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

14         However, a treating physician's opinion is not conclusive as to a claimant's physical condition

15   or the ultimate issue of disability and may be disregarded by the ALJ even when it is not contradicted.

16   *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Magallanes v. Bowen*, 881 F.2d 747,

17   751 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).[2]  An ALJ may reject a

18   treating physician's opinion whether or not it is contradicted, if the opinion is "brief and conclusory in

19   form with little in the way of clinical findings to support its conclusion." *Magallanes,* 881 F.2d at 751.

20   Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute

21   specific, legitimate reasons to reject the opinion. *Matney*, 981 F.2d at 1020.

22         The Ninth Circuit has further explained:

23              To reject the opinion of a treating physician which conflicts with that of an
             examining physician, the ALJ must "'make findings setting forth specific, legitimate
24           reasons for doing so that are based on substantial evidence in the record.'" . . . "The ALJ
             can meet this burden by setting out a detailed and thorough summary of the facts and
25           conflicting clinical evidence, stating his interpretation thereof, and making findings." .
             . . The rule . . . does not apply, however, "when the nontreating physician relies on
26

27         [2]      A treating physician's opinion is not conclusive as to claimant's disability as this ultimate issue is an
     administrative finding reserved to the Commissioner.  20 C.F.R. § 404.1527(e).  The Commissioner has final responsibility
28   to determine a claimant's residual functional capacity.  20 C.F.R. § 404.1546.

1  independent clinical findings that differ from the findings of the treating physician." . .
2  . "'[T]o the extent that [the nontreating physician's] opinion rests on objective clinical
   tests, it must be viewed as substantial evidence . . .'"

3  *Magallanes*, 881 F.2d at 751(citations omitted.)

4      An ALJ may reject a treating physician's report based on a claimant's exaggerated claims. *See,*

5  *e.g., Sandgathe*, 108 F.3d at 980. A physician's opinion of disability "premised to a large extent upon

6  claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints

7  have been "properly discounted." *Fair v. Bowen*, 885 F.2d 597, 605 (citing *Brawner v. Sec. of Health*

8  *& Human Servs.*, 839 F.2d 432, 433-434 (9th Cir. 1988)); *see Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.

9  1996), *cert. denied*, 519 U.S. 1113, 117 S.Ct. 953 (1997) ("no physician has been able to find a link

10  between [claimant's] complaints and known medical pathologies").

11      "[T]he ALJ is responsible for determining credibility, resolving conflicts in the medical

12  testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

13  Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute

14  specific, legitimate reasons to reject the opinion. *Matney*, 981 F.2d at 1020.

15      The ALJ explained his rejection of Dr. Phillips' opinion:

16  Notwithstanding, Dr. Phillips' very restrictive assessment appears to be an
    accommodation in an attempt to help the claimant, as he did not state this in his treatment
17  notes. I reject his opinion because it was premised to a large extent upon claimant's own
    self-serving accounts of her symptoms and limitations, and therefore not worthy of
18  credence. Furthermore, his opinion is inconsistent with the clinical and laboratory
    findings in the record, and is not entitled to special weight. His opinion is rejected
19  because it is inconsistent with the weight of the evidence. (AR 16.)

20      The ALJ properly supported his rejection of Dr. Phillips' opinion. The ALJ correctly assessed

21  that Dr. Phillip's opinion appears as an accommodation to plaintiff and indicated the inconsistencies

22  within Dr. Phillips' medical findings and those of other physicians. The ALJ correctly points out that

23  Dr. Phillips' "very restrictive assessment" is inconsistent with and not supported by objective findings

24  or medical records. Testing failed to substantiate plaintiff's complaints and in turn Dr. Phillips' severe

25  restrictions. Dr. Phillips and Kings Winery Medical Clinic's records reveal that as of March 23, 2001,

26  plaintiff had full range of motion in her lower extremities and a negative leg raising test despite

27  plaintiff's complaint of right leg pain. (AR 422.) March 2002 x-rays of plaintiff's neck and chest were

28  unremarkable and failed to substantiate plaintiff's claims. (AR 346, 347.) A march 2002 head CT scan

was unremarkable, and April 2002 notes reflect control of plaintiff's hypertension.  (AR 397, 398.)  A

June 2002 electrocardiogram was unremarkable.  (AR 390.)  A July 2002 CT scan of plaintiff's lumbar

spine revealed mild spondylolisthesis and a moderate bulge but nothing more to support Dr. Phillips'

far reaching restrictions.  (AR 386.)  July 2002 notes reflect that the CT scan was a borderline finding

and plaintiff's condition is not surgical.  (AR 385, 386.)  Dr. Phillips' April 12, 2002 notation of

tenderness to plaintiff's back, neck and elbow is not supported by range of motion studies or other

clinical findings to support plaintiff's debilitating claims.  (AR 471.)

Dr. Mosley conducted tests and noted no tenderness and that plaintiff had normal range of motion

for her shoulders, elbows, hands, wrists, hips, knees, ankles and back. (AR 125, 126.) The ALJ properly

noted the inconsistencies between Dr. Phillips' assessment and Dr. Mosley's findings:

> . . .There was no tenderness to palpation in the midline or paraspinal areas, and the straight leg raising was negative at 90 degrees. There was no muscle spasm and muscle tone appeared to be equal throughout. Range of motion of the lumbar spine was within normal limits. Range of motion of the upper extremities, elbows, hands, wrists, lower extremities, and knees was within normal limits. There was no crepitus noted. There was no patellar instability. Strength was 5/5 in all extremities.  Sensory was grossly intact. The Romberg was negative. Gait was within normal limits.  Dr. Mosley, on the basis of his evaluation, diagnosed hypertension, by history, well controlled; back pain without evidence of sciatic involvement; and a history of peptic ulcer disease. Since the examination was essentially within normal limits, Dr. Mosley concluded the claimant had no limitations in her ability to perform basic work-related activities.  (AR 16-17.)

An examining, consultative physician's medical report based on objective tests, such as Dr. Mosley's

report, constitutes substantial evidence to support the ALJ's disability determination. *See Magallanes*,

881 F. 2d at 751.  Substantial evidence supports the ALJ's rejection of Dr. Phillip's opinion.

In her opening papers, plaintiff notes in passing that an ALJ is required to "at least attempt to

contact the treating physician."   In her reply papers, plaintiff points to SSR 96-5p and apparently

attempts to argue that  the ALJ failed to attempt to contact the Dr. Phillips to clarify his opinion before

rejecting it. SSR 96-5p requires the Commissioner to " make reasonable effort to recontact such sources

for clarification when they provide opinions on issues reserved to the Commissioner and the bases for

such opinions are not clear to us." 1996 WL 374183, *2 (5)  (S.S.A.). Here, there was no need for

clarification in that nothing indicated Dr. Phillips' opinion was unclear.  Plaintiff appears to confuse lack

1  of clarity with lack of support for the opinion.  The ALJ was not be required to attempt to recontact Dr.

2  Phillips prior to rejecting his opinion.  The SSR 95-5p also states, "opinions from any medical source

3  on issues reserved to the Commissioner must never be ignored." 1996 WL 374183, *3  (S.S.A.) In this

4  case, there is no issue whether ALJ ignored Dr. Phillip's opinion because he contrasted it with evidence

5  and rejected it.

6                                        **Evaluation Of Dr. Parayno's opinion**

7          Plaintiff contends the ALJ failed to properly support his rejection of Dr. Parayno's opinion.

8  Plaintiff argues: "The ALJ's opinion is rejected because it is based on subjective, rather than objective,

9  evidence of record."   After summarizing the medical record (AR 14-15), the ALJ explained his

10  rationale to reject Dr. Parayno's opinion:

11          The claimant has received rehabilitation therapy at Fresno County Mental Health
       commencing May 29, 1997 (Exhibits 6F; 13F).  The group theme/focus involved topics
12      such as community tours and Hmong movie, health issues, field trips, self-love,
       community awareness, parenting issues, personal relationships, women's health, and
13      preparing for Hmong New Year, etc. (Exhibit 6F, pp. 9, 19, 23, 24; Exhibit 13F, pp. 34-
       36, 38).  A progress note of September 6, 2001, revealed Ms. Yang was active in the
14      group outing.  She expressed feeling good to get out of the house and go to the park with
       her peers.  It made her feel better, and she wanted to do it more often.  She ate lunch with
15      her peers, and encouraged peers to share her foods.  She took a walk in the park, and
       stated she wanted to have a barbecue the next time  (Exhibit 13F, p. 25).  In October,
16      2001, she participated in the group and talked often.  Eye contact was good, and she
       laughed often.  The claimant reported that group therapy and community outings helped
17      her to cope with depressed feelings (Exhibit 13F, p. 16).  A Progress Note of December
       11, 2001, noted the claimant was "very busy with preparing her children and family for
18      the Hmong New Year" (Exhibit 13F, p. 12).  Subsequently, Ms. Yang expressed she had
       a good time at the Cambodian New Year's celebration.  She participated in activities,
19      dressed up for the occasion, and enjoyed foods (Exhibit 13F, p. 2).  She stated she had
       "young children so it is hard for her to come more than one time per week," to the
20      meetings (Exhibit 13F, p. 20).

21          The claimant additionally was seen by Dr. Maximo Parayno, a psychiatrist, where she was
       treated for a depressive disorder, not otherwise specified, and an adjustment disorder with
22      depressed mood (Exhibit 12F, pp. 7, 12, 15, 19, 21, 24). An evaluation of March 12, 2002,
       noted she was alert and coherent. Mood was irritable, and affect blunted. She denied
23      suicidal ideations, but felt hopeless and worthless. The claimant denied hallucinations or
       delusions. She reported a poor memory and concentration (Exhibit 12F, p. 15).  The
24      claimant is treated with Paxil and Remeron (Exhibit 7E).  In a Mental Assessment of
       April 9, 2002, Dr. Parayno opined the claimant had moderate to marked limitations in
25      understanding and memory, sustained concentrations and persistence, social interaction,
       and adaption (Exhibit 9F).  I reject the opinion of Dr. Parayno finding it to be largely
26      based on claimant's own subjective complaints rather than on objective medical findings.
       His opinion is rejected because it is inconsistent with the weight of the evidence.
27      Furthermore said conclusion is contrary to his own reports, which revealed few
       abnormalities. (AR 15.)

28

1       The ALJ properly found that Dr. Parayno's opinion was based largely on plaintiff's subjective

2   complaints, not clinical findings, and was inconsistent with the weight of the evidence and Dr. Parayno's

3   reports. *See Saelee*, 94 F.3d at 522; *Fair*, 885 F.2d at 605; *Magallanes*, 881 F.2d at 751, 754.  Dr.

4   Parayno completed a checklist form without a narrative on limitations.  Dr. Parayno failed to  indicate

5   clinical findings to support  his "moderate to marked" limitations to warrant the ALJ's rejection of Dr.

6   Parayno's assessment.  (AR 337-341.)  The ALJ was entitled to reject Dr. Parayno's assessment in that

7   it is "brief and conclusory in form with little in the way of clinical findings to support its conclusion."

8   *Magallanes*, 881 F.2d at 751.  Dr. Parayno's check off form is not entitled to deference.  *Crane v.*

9   *Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983)

10   (expressing preference for individualized medical opinions over check off forms); *see Batson v.*

11   *Commissioner*, 359 F. 3d 1190, 1195 (9th Cir. 2003) (ALJ properly discounted a physician's checklist

12   form view which lack supportive evidence, was contradicted by other statements and assessments of

13   claimant's condition, and was based on claimant's subjective descriptions).  Despite plaintiff's reports

14   to Dr. Parayno of symptoms such as feelings of hopelessness and forgetfulness, Dr. Parayno's treatment

15   does not support significant limitations.

16       Moreover, Dr. Michiel contradicted Dr. Parayno and found that plaintiff's "thought process was

17   goal-oriented" and that plaintiff "is able to maintain adequate attention and concentration and to carry

18   out one or two simple job instructions" and "is able to relate and interact appropriately with coworkers,

19   supervisors and the general public."  Dr. Murillo found plaintiff had mild restriction of daily living

20   activities, mild difficulties in maintaining social functioning, and mild difficulties in maintaining

21   concentration, persistence or pace.  (AR 301.)  Fresno County Mental Health notes reflect that plaintiff

22   feels better in the group therapy and is often active in group participation.  Despite such evidence, Dr.

23   Parayno concludes without explanation that plaintiff has moderate to marked limitations.  Dr. Parayno

24   noted plaintiff prescription to Paxil, a low end medication and an objective indicator of the level of

25   severity.  In addition, as noted by the Commissioner, before Dr. Parayno started treating plaintiff, he

26   assigned a GAF of 60, which at most indicates moderate symptoms, and plaintiff has since improved.

27   **Evaluation Of Dr. Collado's Opinion**

28       Plaintiff contends the ALJ ignored Dr. Collado's opinion.  Plaintiff is incorrect in that the ALJ

1   thoroughly summarized the ALJ's opinion and utilized it as support that plaintiff has fair ability to

2   understand, remember and perform simple instructions.  (AR 14.)  As of January 5, 2001, Dr. Collado

3   noted that plaintiff is able to "follow complicated tasks and instructions."  (AR 106.)  As noted by the

4   ALJ, Dr. Collado recorded plaintiff's improvement with medication in February, April and June 2001.

5   (AR 14.)  Dr. Collado noted "medication continues to help with continued reduction of symptoms" and

6   that medication is "helpful."  (AR 382.)  Plaintiff points to no error in the ALJ's handling of Dr.

7   Collado's assessment.

8                                              **Plaintiff's Credibility**

9           Plaintiff criticizes the ALJ' evaluation of plaintiff's credibility and accuses the ALJ of "'playing

10  doctor' in support of his predetermined action."  The Commissioner counters that the ALJ examined the

11  evidence and gave clear and convincing reasons to doubt plaintiff's subjective complaints.

12          "Credibility determinations are the province of the ALJ."  *Fair*, 885 F.2d at 604; *Russell v.*

13  *Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).  "An ALJ cannot be required to believe every allegation of

14  disabling pain."  *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-serving statements."

15  *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995).  "If the ALJ finds

16  that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must

17  make a credibility determination with findings sufficiently specific to permit the court to conclude that

18  the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

19  Cir. 2002).  If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing

20  court may not engage in second-guessing.  *Thomas*, 278 F.3d at 959.  A reviewing court will not reverse

21  an ALJ's credibility determinations "based on contradictory or ambiguous evidence."  *Johnson*, 60 F.3d

22  at 1434 (citing *Allen*, 749 F.2d at 579 (9th Cir. 1984)).

23          In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

24              In weighing a claimant's credibility, the ALJ may consider his reputation
                for truthfulness, inconsistencies either in his testimony or between his

25              testimony and his conduct, his daily activities, his work record, and
                testimony from physicians and third parties concerning the nature,

26              severity, and effect of the symptoms of which he complains.  *Smolen*, 80
                F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995)

27              (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20
                C.F.R. § 404.1529(c).  An ALJ's finding that a claimant generally lacked

28              credibility is permissible basis to reject excess pain testimony.

1   *See also* S.S.R. 96-7p.[3]

2   An ALJ may consider the following factors to determine the credibility of a claimant's allegations

3   of disabling pain:

1.   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2.   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3.   Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4.   Treatment, other than medication, for relief of pain;

5.   Functional restrictions;

6.   Claimant's daily activities;

7.   Unexplained, or inadequately explained, failure to seek treatment or to follow up a prescribed course of treatment; and

8.   Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *see* 20 C.F.R. §§ 404.1529, 416.929.

After thoroughly outlining plaintiff's testimony, the ALJ explained his rationale to discredit plaintiff:

> I have carefully considered the claimant's allegations pursuant to 20 C.F.R. § 416.929 and S.S.R. 96-7p. In this case, the claimant was totally lacking in credibility. She has embellished symptoms for secondary gain purposes. For example, she reported to the consultant evaluator in November, 2000, she had experienced a 15-pound weight loss, but objectively she has an average weight of 145 from May 17, 1999, to April 18, 2000. Ms. Yang alleged disabling back pain, but I note for the record her treating physician classified a CT scan as showing only "borderline findings (Exhibit 12F, p.1). She testified her back is "okay" if she performs no heavy lifting. Contrary to the claimant's allegations of a severe pain syndrome, I note she is not undergoing any aggressive medical treatment therefor, other than pain medication prescribed by her treating physician which causes no adverse side effects. She had not received treatment consistent with a chronic pain disorder such as biofeedback, acupuncture, the use of a TENS unit, or attendance at pain clinic. She

---

[3]   Social Security Ruling 96-7p sets out factors to assess a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

is not undergoing any physical therapy, or other similar treatment. She did not allege any of her own measures to relieve pain other than rest and medications using a "hot pack" on her back. I also note the claimant is not taking the type or amount of medication normally associated with chronic pain syndrome.  She is not being considered as a surgical candidate.  In terms of mental issues, I note Ms. Yang is being treated with psychotropic medications as prescribed by Dr. Parayno, and is being seen in group therapy, where she was described as articulate, verbal, active, interacting with other members, participating in community events and activities, and attending Hmong New Years celebration, etc. Similarly, at the prior hearing, the claimant was also described as participating in field trips, interacting and laughing with peers, shopping in the mall, eating at various restaurants, crocheting, attending a birthday party, etc. She also became involved in crocheting a scarf and reported feeling less depressed (Exhibit 1A, p.4). There were no substantial restrictions in daily activities, and difficulties in maintaining social functioning were not present. The claimant is able to handle her personal grooming. She has a valid driver's license and directly contrary to her first sworn testimony, drives. Claimant only retracted her testimony after her daughter told the court her mother does drive.  This sequence portrays a claimant willing to deceive the court in order to conceal an activity that's inconsistent with the alleged extent of mental and physical disability. . . . She shops occasionally.  She manages her own affairs, and generally lives in a manner unremarkable for her age and circumstances. The claimant's work history is nonexistent, and does not demonstrate a strong motivation to be gainfully employed and working whenever physically able to do so.  To the extent Ms. Yang alleged physical and mental impairments that would preclude all types of work activity, her testimony was unconvincing and unpersuasive. (AR 18-19).

The ALJ thoroughly explained his rationale to find plaintiff's testimony "unconvincing and unpersuasive." (AR 19.)  The ALJ correctly considered factors to discredit plaintiff's allegations and testimony by addressing:

1.  Duration, frequency, and intensity of back pain (AR 483-484.);

2.  Aggravating factors, including purported lifting of heavy objects, bending over and walking (AR 485-486.);

3.  Type, dosage, effectiveness and adverse side-effects of pain medication and noting medication type and dosage was not an indication of severe back pain (AR 18, 19, 485.);

4.  Treatment other than medication for relief of pain and noting plaintiff uses hot packs to relieve back pain (AR 19, 484.);

5.  Functional restrictions, such as plaintiff's claims that she is unable to lift heavy objects, to stand more than twenty-minutes, or to she sit for longer than an hour;

1      (AR 483.);

2      6.    Claimant's daily activities and noting plaintiff handles her personal grooming,

3            shops occasionally, manages her own affairs, does light housework, and

4            supervises her young children (AR 19, 489, 492.);

5      7.    Unexplained, or inadequately explained, failure to seek treatment or to follow up

6            a prescribed course of treatment and noting plaintiff has not received treatment

7            consistent with chronic pain disorder (AR 19); and

8      8.    Ordinary techniques to test a claimant's credibility and noting plaintiff's

9            testimony was inconsistent and contrary to evidence in the record and her

10           daughter's testimony. Such inconsistencies include plaintiff's testimony that she

11           "never" drives, did not go to the New Year's celebration, was not busy preparing

12           her children for Hmong New Years celebration, did not dress up for the occasion,

13           and is unable to socialize. (AR 18-19, 492-93.)

14     Contrary to plaintiff's claim, the ALJ adequately reviewed the SSR 96-7p criteria to address

15     plaintiff's credibility.  The ALJ's comments regarding plaintiff's weight loss are not subject to

16     meaningful criticism in that the ALJ correctly concluded that during May 1999 to April 2000, plaintiff's

17     average weight was 145 pounds, with her lowest weight of 139 pounds and her highest weight of 150

18     pounds. This Court notes that during that period plaintiff's highest reported weight loss was four pounds.

19     (AR 112.)  The ALJ further correctly noted that plaintiff's therapy notes indicated plaintiff was active

20     in group discussion, interacted with peers, laughed often, and participated in group activities to discredit

21     her claims of mental limitations. These activities indicate an adequate ability to function and were

22     properly considered by the ALJ. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ properly

23     considers plaintiff's ability to participate in activities).

24     As noted by the Commissioner, the ALJ rejected plaintiff's complaints of disabling back

25     pain in that Dr. Dr. Phillips classified plaintiff's CT scan as revealing borderline findings. (AR 18, 385.)

26     The ALJ appropriately considered such evidence in that objective medical evidence "is still a relevant

27     factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*,

28     261 F.3d 853, 857 (9th Cir. 2001).  Furthermore, the ALJ appropriately pointed out plaintiff's absence

1  of aggressive treatment and pain management limited to medication and hot packs to further discredit

2  plaintiff. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("conservative treatment" suggests

3  "a lower level of both pain and functional limitation."); *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir.

4  1982) (existence of an emotional disorder "is not per se disabling", especially if "amenable to control.")

5  As noted above, the ALJ made specific credibility findings to obscure any notion that he arbitrarily

6  discredited plaintiff's testimony. This Court is not in a position to second guess the ALJ's credibility

7  determination.

8  ## CONCLUSION AND ORDER

9  For the reasons discussed above, this Court finds no error in the ALJ's analysis and that

10  the ALJ properly concluded plaintiff is not disabled. This Court further finds the ALJ's decision is

11  supported by substantial evidence in the record as a whole and based on proper legal standards.

12  Accordingly, this Court DENIES plaintiff's request to reverse the Commissioner's decision to deny

13  plaintiff SSI or to remand for further proceedings. This Court DIRECTS the Court's clerk to enter

14  judgment in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against

15  plaintiff Kha Yang and to close this action.

16  IT IS SO ORDERED.

17  **Dated:    July 22, 2005**            **/s/ Lawrence J. O'Neill**
18  66h44d                                 UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28